# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:14-cv-399-RJC
### (3:11-cr-336-RJC-1)

| | |
|---|---|
| ANTONIO MOSLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )               ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending before the Court are the

following motions: (1) Petitioner's Motion for Access to Sealed Court Records (Doc. No. 35),

(2) Petitioner's Motion for Bond (Doc. No. 42); (3) Petitioner's Motion for Status Report

Hearing (Doc. No. 68); (4) Petitioner's Motion for Leave to Expand the Record Pursuant to Rule

7 of the Rules Governing Section 2255 (Doc. No. 71); (5) Petitioner's Motion for Leave to

Supplement Previously Filed 2255 (Doc. No. 73); (6) Petitioner's Motion re: Motion to

Vacate/Set Aside/Correct Sentence (Doc. No. 74); (7) Petitioner's Motion to Appoint Counsel

(Doc. No. 78); (8) Motion to Withdraw as Attorney by Federal Defender (Doc. No. 80); (9)

Petitioner's Motion to Withdraw Counsel and Proceed Pro Se (Doc. No. 81); (10) Petitioner's

Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82); (11) Petitioner's

Motion for Status Report or Hearing re Motion to Vacate/Set Aside/Correct Sentence (Doc. No.

85); and Petitioner's Motion for Leave To Supplement and/or Amend (Doc. No. 89).

## I.       BACKGROUND

**1. Petitioner is shot during a drug deal while providing protection with a firearm.**

On March 18, 2011, Charlotte-Mecklenburg Police Department officers responded to a shooting in a Wal-Mart parking lot in Charlotte, North Carolina. (Crim. Case No. 3:11-cr-336-RJC-1, Doc. No. 73 at 10: 1/7/13 Sentencing Hrg. Tr.; Doc. No. 46 at ¶ 4: PSR). The responding officers found Petitioner lying on the ground, shot in the neck, with a loaded Hi-point, 9-mm, semi-automatic pistol lying next to his body. (Id., Doc. No. 73 at 5-6; Doc. No. 46 at ¶ 4). In investigating the shooting, officers interviewed Barry Adams, who was also at the Wal-Mart parking lot that day. (Id., Doc. No. 73 at 6). Adams reported that he was at the Wal-Mart to sell two ounces of cocaine, which he had received from Petitioner, and that Petitioner was there to provide protection for the deal because Adams was not "comfortable" with the prospective buyer. (Id. at 10). During the deal, as Adams had feared, the buyer pulled a gun and tried to rob Adams of the crack cocaine. (Id.). An exchange of gunfire ensued, with Petitioner firing at the person attempting to rob Adams. (Id.).

When law-enforcement officers arrived at the scene, Petitioner acknowledged that he had shot back at the individual who robbed Adams, stating that he shot at him about seven times. (Id.). Adams reported to investigating officers that when he leaned down to talk to Petitioner after he had been shot, Petitioner told him that he had crack rocks in his pocket and asked Adams to "[g]et them out" before the police arrived. (Id. at 11). Adams did so, hiding them in an area of the parking lot. (Id.). Authorities later located two grams of crack in the parking lot. (Id.).

**2. On the advice of counsel, Petitioner pleads guilty to having been a felon-in-possession.**

A federal grand jury charged Petitioner with a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (Crim. Case No. 3:11-cr-336-RJC-1, Doc.

No. 8: Indictment).  Petitioner eventually retained private counsel, Melissa Owen, who met with Petitioner twice for several hours so Petitioner could review the discovery against him and who ultimately advised Petitioner to plead guilty.  See (Civ. Doc. No. 1-2 at 53: 6/12/12 Letter from Melissa Owen to Pet., attached as Ex. B to Pet. Mot. to Vacate (Ex. B)).

When Petitioner was indicted, he had prior, state-court felony convictions for assault with a deadly weapon causing serious injury, possession with intent to sell or deliver cocaine, and conspiracy to traffic in cocaine, as well as a prior conviction in this Court for conspiracy to possess with intent to distribute crack cocaine.  (Crim. Case No. 3:11-cr-336-RJC-1, Doc. No. 46 at pp. 7-9).  In later explaining her decision to advise Petitioner to plead guilty to the felon-in-possession offense, counsel Owen noted that the discovery revealed that witnesses stated that Petitioner did, in fact, possess the firearm at issue and that Petitioner had provided two statements to the police that he possessed the firearm.  (Civ. Doc. No. 1-2 at 53).  Owen also explained that some witnesses reported that a drug transaction had taken place before the shooting and that Petitioner had been there to provide security for the transaction.  (Id.).  Owen explained further that she had been informed that Petitioner had "show[n] up in a number of calls setting up drug transactions in a collateral federal drug prosecution" and that the Assistant United States Attorney advised Owen that if Petitioner did not plead guilty to the felon-in-possession offense, she would seek a superseding indictment charging Petitioner with participating in a drug-trafficking conspiracy and possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c).  (Id.).  Related to this possibility, Owen noted that if Petitioner were charged with a drug-trafficking offense, his criminal history would qualify him as a career offender, subjecting him "to far higher penalties" than faced on the possession charge alone.  (Id.).

Petitioner entered a straight-up plea of guilty to the felon-in-possession offense, and Magistrate Judge David Cayer conducted a colloquy in accordance with Federal Rule of Criminal Procedure 11. (Id., Doc. No. 72: Rule 11 Tr.). During the colloquy, Petitioner reported to the Court that he was not under the influence of alcohol or drugs and that his mind was clear. (Id. at 4). Petitioner also affirmed that he understood the charge to which he was pleading guilty, as well as the maximum penalty he faced, and that he was, in fact, guilty of the firearm offense. (Id. at 4-5, 7). In response to questions about threats or intimidation, Petitioner affirmed that no one had "threatened, intimidated or forced" him into pleading guilty, nor had anyone made him "any promises or leniency or a light sentence" to induce him to plead guilty. (Id. at 8). Finally, Petitioner affirmed that he had had enough time to discuss any possible defenses to the charge with trial counsel and that he was "satisfied with Ms. Owen." (Id.).

**3. After Petitioner questions the circumstances of his guilty plea, this Court suspends the first sentencing hearing.**

A probation officer prepared a PSR in advance of the sentencing hearing that calculated a total offense level of 25, including a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm during the course of a drug-trafficking transaction. (Id., Doc. No. 28 at 4-5: Draft PSR). Although the probation officer initially believed that Petitioner qualified as an armed career criminal, subjecting him to a statutory mandatory minimum of 180 months in prison, see 18 U.S.C. § 924(e), Owen spoke with the probation officer after Petitioner's pre-sentence interview and explained her argument that Petitioner did not qualify as an armed career criminal. See (Civ. Doc. No. 1-2 at 53-54). The probation officer ultimately agreed with trial counsel, and the final PSR did not include this enhancement. See (Crim. Case No. 3:11-cr-336-RJC-1; Doc. No. 46 at 4-5).

This Court, the Honorable Max O. Cogburn, Jr., presiding, convened the first sentencing hearing on October 26, 2012.[1]   At the beginning of the hearing, this Court questioned Petitioner about his answers during the Rule 11 colloquy to confirm that Petitioner still wanted to plead guilty.  (Id., Doc. No. 70 at 2-3: 10/26/12 Sentencing Hrg. Tr.).  In response, Petitioner questioned whether he had been "threat[ened] or intimidate[ed]" into entering his first plea based on the Government's advisement to his attorney that they would supersede the indictment to add additional charges if Petitioner did not plead guilty.  (Id. at 3).  Petitioner also challenged whether he had received all of the discovery in his case and complained that, although he was the victim of a gunshot wound, he was the only one charged arising out of the events at the Wal-Mart parking lot.  (Id. at 4-5).

Although Petitioner questioned whether he had been able to review all of the discovery, he never suggested that he was not guilty, stating, "I ain't saying I'm not guilty."  (Id. at 5).  After hearing from Petitioner, this Court decided to suspend the sentencing hearing to enable Petitioner "to view whatever else there is in the [discovery] file that he [had] not viewed."  (Id. at 8).  The Court then explained to Petitioner that he would have to decide whether he wanted to move to withdraw his guilty plea.  (Id.).

Before suspending the hearing, the Court explained that the Government had not "improper[ly]" threatened or intimidated Petitioner by agreeing to forego additional charges in exchange for his guilty plea.  (Id. at 9).  The Court explained that such a negotiation was "pressure but . . . proper pressure of the plea bargaining process."  (Id.).  In response, Petitioner insisted that he did not want to go to trial but that he did want a hearing into the veracity of the

---

[1]   Following Petitioner's filing of his motion to vacate, Judge Cogburn recused himself from further consideration of the petition, and the matter was subsequently reassigned.  See (Civ. Doc. No. 63).

witnesses against him.  (Id.).  After further discussion, Petitioner stated that he understood that he would not get that hearing and that he would "take [his] plea."  (Id. at 15).  This Court declined to allow the plea at that time, instructing counsel Owen to make all discovery available to Petitioner.  (Id. at 18).  Counsel Owen agreed, but also noted that Petitioner had "had multiple opportunities to review the discovery . . [a]ll of the paper documents . . . ."  (Id.).  Owen explained that although there were discs of videotaped interviews that Petitioner had not been able to review because of compatibility issues between the discs and the software at trial counsel's law office, Petitioner was able to review transcripts of each of those recordings.  (Id. at 19).  This Court instructed counsel to figure out a way to enable Petitioner to view the videos in full.  (Id. at 20-21).  Although Petitioner continued to insist that he did not want to withdraw his plea and that he could raise the issues he sought to raise in a Section 2255 motion or "later on," this Court advised him that he could make that decision after he viewed the videos.  (Id. at 11, 21, 23-24).

**4. At the conclusion of the second sentencing hearing, this Court sentences Petitioner to a downward-variance sentence of 100 months in prison.**

This Court convened a second sentencing hearing on January 7, 2013.  At the beginning of the hearing, Petitioner affirmed that the answers that he gave during his Rule 11 colloquy were correct and that he was, in fact, guilty of the § 922(g) offense.  (Crim. Case No. 3:11-cr-336-RJC-1, Doc. No. 73 at 3).  Petitioner stipulated to the facts set forth in the offense conduct section of the PSR that met the elements of the offense, including that he possessed a gun on the day in question.  (Id. at 4-7).  He refused to stipulate, however, to the facts that purported to establish that "this was a drug deal gone bad."  (Id. at 4, 6).

In response to Petitioner's objection to the four-level enhancement based on his having possessed the firearm in connection with a drug-trafficking offense, the Government called ATF Special Agent Robert Bryson to testify to the facts establishing that this offense was in the course of a drug-trafficking transaction. See (Id. at 9). Agent Bryson recounted Adams' interview in which he relayed that he was there to sell drugs, that he brought along Petitioner to serve as protection in case the deal went badly, that the drug buyer attempted to rob him, and that this robbery resulted in an exchange of gunfire between Petitioner and the would-be robbers. (Id. at 10-11). Agent Bryson also relayed Petitioner's statements to officers that he (Petitioner) shot at the robbers approximately seven times. (Id. at 10).

Petitioner's counsel cross-examined Agent Bryson to refute the "drug deal gone bad" scenario. Petitioner's counsel established that Agent Bryson had not personally interviewed Petitioner or Adams and instead was relying on other officers' reports. (Id. at 11-12). Counsel also established that the crux of the evidence came solely from Adams' statement, though Agent Bryson testified that he had also considered what was found at the crime scene and other witnesses' statements. (Id. at 12-13). Counsel elicited that Petitioner did not mention anything about drugs in his interview with law enforcement officials and that several other witnesses, including Adams' girlfriend, did not tell investigators that this was a drug robbery. (Id. at 13-15, 17-18). Counsel further established that Adams did not tell the first CMPD detective to interview him that the robbery was a drug robbery, that for much of his first interview he insisted that this was merely a robbery of $60, and that he changed his story after a two-hour break in the interview. (Id. at 16, 18-20). When asked about the change in Adams' story after a two-hour break and whether any promises had been made to Adams that were not recorded, Agent Bryson testified that ordinarily the recording is not stopped, even during breaks. (Id. at 19). Although

Agent Bryson did not know "for sure" whether the recording had been continued during Adams' interview, he testified that continuing the recording was "common practice." (Id.). Agent Bryson also acknowledged on cross-examination that Petitioner's teenage daughter was interviewed and repeatedly denied that the robbery had anything to do with drugs. (Id. at 20).

As counsel was cross-examining Agent Bryson about Petitioner's teenage daughter, counsel for the Government requested a moment to speak with Petitioner's counsel. (Id.). The attorneys then had an off-the-record discussion with this Court and, at some point during this conference, the Court relayed that if it assessed the four-level enhancement under § 2K2.1(b)(6)(B) it would "likely" sentence Petitioner at the low-end of the advisory range but, if it did not apply the enhancement, it would sentence Petitioner at the high end of the range. (Id. at 30, 40-41). At the conclusion of this discussion, Petitioner withdrew his objection and requested to move forward to sentencing. (Id. at 21). At some point before Petitioner withdrew his objection, he was informed that if he did not withdraw his objection, the Government would seek a superseding indictment. (Id. at 43).

Before arguing for a specific sentence, the Government noted that it would not move for the third-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), given Petitioner's litigious posture between entry of his guilty plea and the sentencing hearing, which included more than 15 filed motions and the fact that he repeatedly declined to accept responsibility for his criminal conduct. (Id. at 21-22). Without the third-level reduction, Petitioner's total offense level was 26, with a criminal history category V, yielding an advisory range of 110 to 120 months. (Id. at 21).

In response, Petitioner's counsel requested a downward-variance sentence of 100 months. (Id. at 22). Counsel acknowledged Petitioner's litigiousness but argued that, notwithstanding all

of his court filings, he never denied that he committed the offense.  (Id.).  In asking for a lower

sentence, counsel recounted the "suffer[ing]" Petitioner had endured as a result of his gunshot

wound to the neck and contended that "the justice system has failed him" because no one was

prosecuted for the shooting.  (Id. at 22-23).  This line of argument prompted this Court to

observe that "the evidence [was] pretty clear he got shot because he showed up at a drug deal

with a gun," that Petitioner was "hang[ing] out with gun-toting drug dealing crooks," and that

Petitioner was shot because he "was a criminal involved with guns and drugs."  (Id. at 23).  The

Court acknowledged that Petitioner did not "have to agree to every nuance of the crime" but

stated that there was "plenty of evidence to support the Government's version [that this was a

drug deal gone bad]."  (Id. at 24).  The Court emphasized that "the justice system is treating

[Petitioner] very very fairly."  (Id. at 25).

     Petitioner then spoke on his own behalf, again complaining that he was the only one

charged as a result of the shooting incident.  (Id. at 26).  Petitioner requested a sentence below

100 months and asserted that when he confessed, he was under medication and had been

antagonized by law enforcement.  (Id. at 27-28).

     The Court sentenced Petitioner to 100 months of imprisonment.  (Id. at 39).  The Court

found that Petitioner had accepted responsibility for the offense, even though Petitioner did not

agree "chapter and verse [with] the government's version" of the offense.  (Id. at 35).  Thus, the

Court varied one level "to reach the level the Court believed this should have been sentenced at,

and is going to be sentenced at, [a range] of 100 to 125 months."  (Id. at 36).  The Court noted its

reluctance to vary from the Guidelines, but explained that it "ha[d] to sentence where [the court]

believe[d] the sentence ought to go."  (Id.).  The Court also noted that its downward variance

avoided unwarranted sentencing disparities among defendants who fully accept responsibility for

the crimes with which they are charged. (Id.). Even after imposing the sentence, the Court continued to explain its conclusion that 100 months was the appropriate sentence in this case, regardless of the guideline enhancements. (See id. at 41; see also id. at 43 ("I sentenced you to the sentence that I think is appropriate in this case under all these circumstances.").

Petitioner appealed, arguing that trial counsel provided ineffective assistance of counsel in withdrawing Petitioner's objection to the four-level enhancement. The Fourth Circuit affirmed this Court's judgment, holding that Petitioner had "failed to demonstrate that ineffective assistance of counsel conclusively appears on the record." United States v. Mosley, 552 F. App'x 267, 268 (4th Cir. 2014).

Petitioner now seeks to have his conviction and sentence vacated and has submitted an affidavit in support of the numerous claims raised in his motion. The Government has filed a response to Petitioner's motion to vacate, addressing each of his claims. (Civ. Doc. No. 57). Moreover, since filing his original motion to vacate, Petitioner has filed numerous motions to amend and/or supplement, which the Court addresses below. Petitioner has also filed numerous, other pending motions in this matter, and the Court addresses each of them separately as well.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A. Pending Motions

Before addressing Petitioner's claims in support of his motion to vacate, this Court will first address the following motions currently pending in this matter: (1) Petitioner's Motion for Access to Sealed Court Records (Doc. No. 35), (2) Petitioner's Motion for Bond (Doc. No. 42); (3) Petitioner's Motion for Status Report Hearing (Doc. No. 68); (4) Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing Section 2255 (Doc. No. 71); (5) Petitioner's Motion for Leave to Supplement Previously Filed 2255 (Doc. No. 73); (6) Petitioner's Motion re: Motion to Vacate/Set Aside/Correct Sentence (Doc. No. 74); (7) Petitioner's Motion to Appoint Counsel (Doc. No. 78); (8) Motion to Withdraw as Attorney by Federal Defender (Doc. No. 80); (9) Petitioner's Motion to Withdraw Counsel and Proceed Pro Se (Doc. No. 81); (10) Petitioner's Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82); (11) Petitioner's Motion for Status Report or Hearing re Motion to Vacate/Set Aside/Correct Sentence (Doc. No. 85); and (12) Petitioner's Motion for Leave To Supplement and/or Amend (Doc. No. 89).

### 1. Petitioner's Motion for Access to Sealed Court Records (Doc. No. 35)

First, as to Petitioner's Motion for Access to Sealed Court Records, (Doc. No. 35), Petitioner requests that, among other things, that this Court unseal and grant Petitioner access to: "all Pen Register Programs, Trap and Trace Programs, Caller ID, Deluxe Caller ID, "Fraudbuster" Reports, Pen Links, Wiretap Affidavits, Wiretap Applications and other seal[ed] records maintained by the United States Clerk that pertained to Petitioner filed with the Court from 2009 until the present seeking approval for U.S. Marshal Service's deployment of interception of private communications" and "all orders grant or denying such applications." (Doc. No. 35 at 13-14). Petitioner seeks, alternatively, that the Court unseal and grant Petitioner access to all

orders granting or denying such applications, and that the Court order the Clerk to provide Petitioner with a list of all the applications for the period of 2009 to the present, including the docket numbers, and that the Court order the Clerk to give Petitioner access to any search warrant applications and return of search warrants relating to Petitioner from 2009 to the present. (Doc. No. 35 at 14). Petitioner argues "the U.S. Marshal Service since 2009 illegally seized by federal agents non-criminal private communications in violation of Petitioner[s] First, Fourth, Fifth, Sixth and Fourteenth Amendment rights . . . during a subsequent to illegal wiretaps of Petitioner's telephone communications." (Id. at 2). Petitioner also seeks a hearing on this motion.

Petitioner's motion is denied, as he is not entitled to access to the sealed and confidential records that he seeks in his motion. Petitioner asserts nothing more than conclusory arguments that the documents at issue violated his Fourth Amendment or other constitutional rights, nor has he demonstrated that he has the right to access to these documents. Furthermore, by pleading guilty Petitioner waived all defenses and non-jurisdictional defects, including Petitioner's contention that the aforementioned searches violated his Fourth Amendment and other constitutional rights. United States v. Devaughn, 73 F. App'x 627, 628 (4th Cir. 2003) (per curiam) ("[A] knowing and voluntary guilty plea waives antecedent non-jurisdictional errors, including claims of unlawful search and seizure.") (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).

In sum, for these reasons, Petitioner's motion for access to sealed court records is denied.

## 2. Petitioner's Motion for Bond (Doc. No. 42)

Next, as to Petitioner's Motion for Bond, Petitioner seeks "release from custody pending final resolution of his motion to vacate . . . ." (Doc. No. 42 at 1). Petitioner's motion for bond is denied.

**3. Petitioner's Motion to Appoint Counsel (Doc. No. 78); Motion to Withdraw as Attorney by Federal Defender (Doc. No. 80); Petitioner's Motion to Withdraw Counsel and Proceed Pro Se (Doc. No. 81)**

Next, as to the Motion to Withdraw as Attorney by Federal Defender Joshua Carpenter, (Doc. No. 80), who was appointed by this Court pursuant to a Standing Order to inquire into whether Petitioner had a claim under United States v. Johnson, 135 S. Ct. 2551 (2015), the motion to withdraw is granted. Similarly, Petitioner's Motion to Withdraw Counsel and Proceed Pro Se, (Doc. No. 81), is granted. As to Petitioner's Motion to Appoint Counsel, (Doc. No. 78), in § 2255 actions, appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. Id. Moreover, there is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). This Court finds that Petitioner has not shown that appointment of counsel is appropriate in this case. The Court, therefore, denies Petitioner's motion to appoint counsel.

**4. Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing Section 2255 (Doc. No. 71), Petitioner's Motion for Leave to Supplement Previously Filed 2255 (Doc. No. 73), Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 (Doc. No. 74), Petitioner's Supplement Newly Amended**

**Supplement to Motion to Vacate (Doc. No. 82), and Petitioner's Motion for Leave to Supplement and/or Amend (Doc. No. 89).**

Next, the Court considers Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing Section 2255 (Doc. No. 71), Petitioner's Motion for Leave to Supplement Previously filed 2255 (Doc. No. 73), Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 (Doc. No. 74), Petitioner's Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82), and Petitioner's Motion for Leave To Supplement and/or Amend (Doc. No. 89).

First, as to Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing Section 2255 (Doc. No. 71), filed on March 31, 2016, Petitioner seeks to expand the record to include transcript pleas for several prior convictions in state court to support his contention that he is entitled to relief under Johnson. The Court grants the motion to the extent that the Court has considered these additional documents in considering Petitioner's supplemental claim under Johnson.

Next, as for Petitioner's Motion for Leave to Supplement Previously filed 2255 (Doc. No. 73), Petitioner seeks to supplement his motion to vacate to add a claim under Johnson, in which the Supreme Court held that the so-called residual clause of the Armed Career Criminal Act is invalid. Petitioner contends that he is entitled to relief under Johnson because his sentence was enhanced under U.S.S.G. § 2K2.1(a) based on having prior felony convictions for a "crime of violence" and a "controlled substance offense." Petitioner argues that, under Johnson, his prior conviction for assault with a deadly weapon inflicting serious injury no longer qualifies as a predicate for a base offense level of 24 under U.S.S.G. § 2K2.1(a). Petitioner reasons that because the language of U.S.S.G. § 2K2.1(a) is the same as the language in the ACCA's residual

clause that was struck down in Johnson, it follows that an enhanced sentence under U.S.S.G. § 2K2.1(a) is also invalid under Johnson.  Petitioner's argument is without merit.  On March 6, 2017, the Supreme Court held in Beckles that "the advisory Guidelines are not subject to vagueness challenges."  137 S. Ct. 886, 890 (2017).  Petitioner's Johnson challenge to his enhanced sentence under U.S.S.G. § 2K2.1(a) therefore has no validity in light of Beckles. Accordingly, the Court will grant the motion to supplement to the extent that the Court has considered Petitioner's supplemental Johnson claim, but the Court finds that it has no merit.

Similarly, as to Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 (Doc. No. 74), filed on July 12, 2016, Petitioner expounds on his Johnson claim.  The Court grants the motion for leave filed on July 12, 2016, but the Court has already found that there is no merit to Petitioner's Johnson claim because it is foreclosed by Beckles.  In his motion for leave to expand the record, Petitioner also seeks to add a new claim that he does not have two prior convictions for purposes of U.S.S.G. § 2K2.1(a) because his sentences on the assault with a deadly weapon inflicting serious injury and for possess with intent to sell/deliver cocaine were consolidated.  He, therefore, contends that he is entitled to relief under the Fourth Circuit's decision in United States v. Davis, 679 F.3d 177, 182 (4th Cir. 2012), and therefore Section 2K2.1(a)(2) should not have applied.  Petitioner notes that the transcript of his plea agreement in North Carolina state court states that all of Petitioner's convictions, including his drug possession conviction, were consolidated for judgment, with a cap of ten years under the assault with a deadly weapon conviction, to be treated as a single charge.   (Doc. No. 74 at 3).  Petitioner, therefore, argues that "in light of United States v. Davis, the base offense level of 24 does not apply where multiple prior felony conviction[s] result in a "single sentence" under state law." (Id. at 5).  Petitioner further argues that his prior conviction for conspiracy to traffic in cocaine is

not a controlled substance offense in light of <u>United States v. Brandon</u>, 247 F.3d 186 (4th Cir. 2001).  Petitioner argues that "[h]ad the base offense level of 24 had not been imposed in movant's case he would have been sentenced to a significant[ly] lower range of 57-71 months or lower."  (<u>Id.</u> at 6).

Petitioner's additional claim is denied.  Petitioner is essentially seeking to amend his motion to vacate to add new, substantive claims (aside from his timely <u>Johnson</u> claim) as to why he should have received a lower base offense level than that designated through the application of U.S.S.G. § 2K2.1(a)(2).  The amendment of § 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure.  <u>See</u> <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000).  Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days or within 21 days after service of a responsive pleading.  FED. R. CIV. P. 15(a)(1). In all other cases, a party must seek leave to amend.  FED. R. CIV. P. 15(a)(2).  Here, Petitioner filed the motion to amend more than one year after his judgment became final.  Thus, Petitioner's motion to amend is untimely under the one-year statute of limitations set forth in Section 2255(f).  An otherwise untimely amendment, however, may relate back to the date of the original Section 2255 motion if the newly asserted claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  FED. R. CIV. P. 15(c)(2).  In order for this Court to find that an otherwise untimely claim relates back, the proposed amended claim must arise from the "same core facts," and the claim may not be dependent on events that are separate both in time and in the substance of the facts upon which the original claims depended.  <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 655-57 (2005).

Here, Petitioner's proposed amended arguments as to his prior state court convictions, and the application of U.S.S.G. § 2K2.1(a)(2) do not arise out of the "same core facts" as

asserted in his original petition. Therefore, the motion to amend the petition to add these new substantive claims is denied. In any event, Petitioner is not entitled to relief on these claims, as the Fourth Circuit Court of Appeals has held that mere errors in guidelines calculations are generally not cognizable in a Section 2255 proceeding. See United States v. Foote, 784 F.3d 931, 943 (4th Cir. 1015). Rather, for Petitioner to obtain relief based on a sentencing guidelines error, he must establish that the alleged sentencing error result in a complete miscarriage of justice. Id. at 940; see also United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999) (the misapplication of the Guidelines is not cognizable under § 2255 because "a misapplication of the guidelines typically does not constitute a miscarriage of justice"). Petitioner has wholly failed to make this showing. Indeed, as noted, Petitioner received a downward variance in his sentence in this case. In sum, Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7, (Doc. No. 74), filed on July 12, 2016, will be denied.

Next, as to Petitioner's Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82), filed on September 19, 2016, Petitioner states that he is submitting "two additional arguments" to his prior supplement to his motion to vacate. Petitioner's Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82), is denied for the same reason as his other motions to amend or supplement are denied because he merely asserts the same arguments regarding application of U.S.S.G. § 2K2.1(a)(2) to obtain a base offense level of 24. He also appears to raise an additional argument that his criminal history points were incorrectly calculated. As the Court has already noted, Petitioner's arguments are simply not cognizable in this Section 2255 proceeding because, even assuming guidelines error in this matter, the error did not result in a miscarriage of justice.

Next, as to Petitioner's Motion for Leave to Supplement and/or Amend (Doc. No. 89), filed on July 6, 2017, Petitioner seeks to amend the motion to vacate to add a claim under the Supreme Court's recent decision in <u>Lee v. United States</u>, No. 16-327, based on counsel's alleged failure to adequately communicate a "new" pre-trial plea offer to Petitioner.  Petitioner's motion is denied because the <u>Lee</u> holding simply does not apply to Petitioner, as <u>Lee</u> involved a claim that the petitioner received ineffective assistance of counsel based on counsel's failure to advise him that a plea would lead to mandatory deportation.  No. 16-327, 2017 WL 2694701, at *9 (Sup. Ct. June 23, 2017) ("In the unusual circumstances of this case, we conclude that Lee has adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation.").  In sum, Petitioner's motion for leave to supplement and or amend to add a claim under <u>Lee</u> is denied.

5.  **Petitioner's Motion for Status Report Hearing (Doc. No. 68), Petitioner's Motion for Status Report (Doc. No. 85)**

Next, as for Petitioner's Motion for Status Report (Doc. No. 85), the motion is granted to the extent that the Court is now ruling on the pending motion to vacate.  Furthermore, as to Petitioner's Motion for Status Report Hearing (Doc. No. 68), the motion is denied as moot.

**B.  Petitioner's Claims of Ineffective Assistance of Counsel**

The Court next addresses Petitioner's claims of ineffective assistance of counsel.  The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  <u>See</u> U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

1. **Counsel's withdrawal of the objection to enhancement for possession of a firearm in connection with another felony offense.**

Petitioner first argues that trial counsel Owen rendered constitutionally deficient representation by withdrawing Petitioner's objection to the four-level enhancement based on Petitioner's having possessed a firearm in connection with another felony offense—specifically, a drug transaction for which Petitioner was providing "security."  Section 2K2.1(b)(6)(B) of the sentencing guidelines provides for a four-level enhancement "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(A).  Although the record does not contain a transcript of the sidebar conference that preceded the withdrawal of Petitioner's objection, Petitioner cannot show either that counsel Owen provided deficient representation in deciding to withdraw that objection or that there is a reasonable probability that this Court would have sustained the objection if she had not withdrawn it.

First, Petitioner cannot show that counsel provided deficient representation in withdrawing the objection, because there is no evidence on the record that the objection was well founded.  Agent Bryson provided competent testimony of the law-enforcement investigation into the shooting, which included the investigators' conclusion that the shooting occurred during a drug transaction involving Petitioner.  Agent Bryson testified regarding Adams' statement describing the incident, as well as to Petitioner's admission that he had shot at the buyers of the crack cocaine approximately seven times.  While Petitioner points to trial counsel's cross-examination of Agent Bryson as proof that his testimony was not credible, nothing Agent Bryson acknowledged on cross-examination undermined his earlier testimony that Adams provided a statement placing Petitioner as a participant at the scene of the drug transaction.  Additionally, although Petitioner asserts in his affidavit that Adams recanted his statement that Petitioner was providing security for a drug transaction, he has not provided any competent evidence supporting that self-serving assertion.  Because the record contains no evidence, other than Petitioner's own

conclusory assertions, that Petitioner did not possess the firearm in connection with a drug transaction and because there is evidence in the record clearly supporting the enhancement, Petitioner has not shown that counsel improperly withdrew the objection to the enhancement.

Even if Petitioner could show that counsel improperly withdrew the objection, he cannot show prejudice. As this Court (the Honorable Max O. Cogburn, Jr., presiding) stated during the second sentencing hearing, based on the evidence presented to support the enhancement, it was "pretty clear [Petitioner] got shot because he showed up at a drug deal with a gun," and that Petitioner was shot because he "was a criminal involved with guns and drugs." (Crim. Case No. 3:11-cr-336-RJC-1, Doc. No. 73 at 23). Based on these comments, Petitioner cannot show a reasonable probability that, even if counsel had not withdrawn his objection to the enhancement, this Court would have sustained the objection. To the contrary, these statements make clear that this Court was inclined to overrule the objection.

### 2. Counsel's failure to investigate and file pre-trial motions.

Petitioner next argues that counsel improperly failed to investigate the conditions under which he provided his recorded confession to law enforcement. Specifically, Petitioner asserts that had counsel investigated, she would have discovered that Petitioner was taking medication and that his confession was given without adequate Miranda warnings. Aside from attaching copies of prescription labels from several months after the March 2011 shooting, Petitioner has submitted no evidence supporting his assertion that his confession was given without Miranda warnings or under duress. Additionally, Agent Bryson testified that Petitioner gave a statement at the scene of the shooting admitting that the firearm was his and that he had fired approximately seven shots during the shooting incident. As there is no suggestion that Petitioner was in custody at the time this statement was provided, Miranda warnings would not have been

required.  See United States v. Hashime, 734 F.3d 278, 282 (4th Cir. 2013) (explaining that "the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation").

Petitioner also asserts that counsel improperly failed to investigate the authenticity of the recordings provided in discovery, suggesting that counsel should have advised him that he could move to suppress the recordings based on a lack of evidence authenticating them.  As with his assertion that counsel improperly failed to investigate the circumstances of his confession, however, Petitioner has not presented any evidence suggesting that the evidence the Government provided to counsel in discovery was in any way inaccurate or inauthentic.  Petitioner's assertion that there is reason to doubt the authenticity of the discovery is entirely speculative and cannot support a claim for relief.

Next, Petitioner asserts that counsel should have investigated the jail calls between Adams and Petitioner, because in one of those telephone calls Adams recanted his statement that Petitioner was at the drug transaction for protection.  Specifically, Petitioner states in his affidavit that he had been informed, before he pleaded guilty, that Adams had recanted his statement that Petitioner was at the parking lot in order to provide security for a drug transaction and that this conversation was recorded at the Mecklenburg County Jail.  (Civ. Doc. No. 1-2 at ¶ 3: Ex. A attached to Pet. Mot. to Vacate).  Petitioner asserts that he informed counsel about this call and suggests that because counsel did not present a recording of the call during the sentencing hearing, she must have failed to investigate this claim.  The fact that counsel did not present a recording of a jail call during Petitioner's sentencing hearing, however, does not demonstrate that counsel failed to investigate the existence of a recording.  Additionally, even if Petitioner could show that counsel should have investigated this phone call and failed to do so,

he has not demonstrated that even if Adams recanted his earlier statement, this Court would have declined to apply the enhancement, particularly where Adams' statement was corroborated by the investigation of the scene of the shooting and where Petitioner admitted to having exchanged gunfire with the individual who shot him. Considering Agent Bryson's testimony summarizing the strength of the Government's proof that Petitioner was present at the drug transaction, carried a gun to the transaction, and used a gun when the transaction turned into a robbery, Petitioner cannot show a reasonable probability that this Court would have declined to apply the enhancement, even if counsel had investigated the existence of the alleged jail call between Petitioner and Adams.

Next, Petitioner's claim that counsel improperly failed to investigate a two-hour break in the recording of Adams' interview suffers from the same lack of proof. Although counsel's questions of Agent Bryson reflect that she knew the agents took a two-hour break in their questioning of Adams, it is not clear from the record that counsel had any reason to believe that there was a recording of whatever occurred in the interview room during that two hours. Even if Petitioner could show that the recording exists and that counsel failed to investigate that possibility, however, he cannot establish the prejudice necessary to prove a claim of ineffective assistance of counsel, because there is no evidence that there actually is a recording of that time period or that anything helpful is on that recording, if there is one.

**3. Counsel's alleged failure to give Petitioner correct advice on the consequences of pleading guilty and his likely sentence.**

Petitioner next asserts that counsel incorrectly advised him that he was an armed career criminal and failed to advise him about how the Sentencing Guidelines would affect his sentence. Petitioner asserts that had he known "for sure that he was not an armed career

criminal, it is likely he would have renegotiated a plea offer agreement at the initial phase of the case, without the ACCA enhancement." (Doc. No. 1-2 at 37).

This claim fails, first, because there is no evidence in the record that Petitioner was ever misadvised as to his status as an armed career criminal. In her June 12, 2012, letter to Petitioner, counsel discusses both the armed-career-criminal enhancement and the career-offender enhancement, noting that she had successfully challenged Petitioner's qualification for the armed-career-criminal enhancement. (Civ. Doc. No. 1-2 at 53-54). With respect to the career-offender enhancement, counsel notes in her letter to Petitioner that before he decided to plead guilty, she advised Petitioner that if he did not plead guilty to the felon-in-possession offense and the Government sought an indictment on additional drug-trafficking charges, he would qualify as a career offender, "subjecting [him] to far higher penalties" than the penalties he faced at that time. (Id.). As Petitioner's criminal history makes clear that he would have qualified as a career offender, counsel's assessment was sound. Moreover, as Petitioner presents no evidence that counsel ever advised him that he qualified as an armed career criminal, he has not presented any evidence that counsel's representation was deficient.

Second, Petitioner has not shown prejudice. While Petitioner suggests that had he known that he was not an armed career criminal, he would have likely been able to negotiate a more advantageous plea agreement, there is no evidence in the record that any plea agreement was ever extended to Petitioner, much less any evidence that he could have negotiated a better plea agreement had he known he was not an armed career criminal. The implication from counsel's letter to Petitioner is that the Government was not inclined to offer Petitioner any deal, beyond the agreement not to seek more serious charges if Petitioner agreed to plead guilty to the §

922(g) firearm offense.  Because Petitioner has not shown either deficient representation or prejudice, this claim fails.

### 4. Counsel's failure to investigate Project Safe Neighborhood.

Petitioner next asserts that counsel failed to investigate whether state authorities "handed over" his case for federal prosecution, asserting that had counsel conducted an adequate investigation, she would have advised Petitioner to enter a plea of guilty to a felon-in-possession charge in state court.  This claim fails because there is no evidence that counsel represented Petitioner for purposes of any state prosecution, that there was any opportunity for Petitioner to plead to a state offense, or that any action on the part of counsel would have resulted in such an opportunity.  Petitioner's motion, therefore, fails for lack of proof of either deficient representation or prejudice.

### 5. Counsel's failure to investigate the validity of Petitioner's prior convictions.

Petitioner next asserts that counsel improperly failed to investigate the validity of his prior, North Carolina state-court convictions and to file a motion for appropriate relief in the North Carolina state court to vacate those convictions.  As Petitioner acknowledges, however, counsel did research his prior convictions, and she successfully advocated against his classification as an armed career criminal.  Although Petitioner asserts that counsel should have filed a motion for appropriate relief in state court, counsel's representation of Petitioner for purposes of this federal prosecution did not authorize or require that she file an action in state court seeking to have Petitioner's prior convictions vacated.  Additionally, Petitioner has not presented any evidence supporting his assertion that any of his prior convictions was invalid or that there is no reasonable probability that a motion for appropriate relief would have been granted and granted before this Court sentenced Petitioner.

With respect to Petitioner's September 28, 1994, guilty plea in the Superior Court of Cabarrus County, North Carolina, the plea transcript in that action establishes that Petitioner was, in fact, advised of the maximum penalty he faced as to each of the offenses to which he was pleading guilty. (Civ. Doc. No. 15 at 9-15, Plea Tr. #1, attached to Pet. Second Suppl. to Mot. to Vacate; Doc. No. 15 at 19-25, Plea Tr. #2 attached to Pet. Second Suppl. to Mot. to Vacate). Finally, given this Court's decision to vary downward and its statement during Petitioner's sentencing hearing that the Court was imposing the sentence this Court deemed to be the right sentence based on Petitioner's crime and the 18 U.S.C. § 3553(a) sentencing factors, there is no reasonable probability that Petitioner would have received a sentence lower than 100 months, even if one or both of the prior convictions he now challenges were vacated by the state court. Petitioner has failed, therefore, to show either deficient representation or prejudice.

**6. Appellate counsel's failure to raise various claims on appeal.**

In his final claim of ineffective assistance of counsel, Petitioner asserts that appellate counsel provided constitutionally deficient representation in failing to present particular arguments on appeal, including arguments claiming vindictive prosecution, prosecutorial misconduct, and a violation of Alleyne v. United States, 133 S. Ct. 2151 (2013), and arguments challenging the denial of a ruling on trial counsel's motion to withdraw, the failure of counsel Owen to inquire as to mental status, and the denial of conflict-free counsel. For the following reasons, Petitioner's claim of ineffective assistance of appellate counsel is without merit.

To show prejudice in the context of appellate representation, "a petitioner must establish a reasonable probability . . . he would have prevailed on his appeal but for his counsel's unreasonable failure to raise an issue." United States v. Rangel, 781 F.3d 736, 745 (4th Cir. 2015) (internal quotation marks omitted). With respect to a claim of vindictive prosecution or

prosecutorial misconduct, as discussed below, Petitioner has not identified any improper conduct on the part of the prosecutor or that any decision by the prosecutor prejudiced him. The Supreme Court has made clear that a prosecutor does not act improperly in informing a defendant that the prosecutor will seek more serious charges against him if he decides not to plead guilty to a lesser offense. See Bordenkircher v. Hayes, 434 U.S. 357, 358, 365 (1978); see also United States v. Corbitt, 675 F.2d 626, 630 (4th Cir. 1982) (rejecting claim of vindictive prosecution based on defendant's assertion that government sought indictment on more serious charges three days after defendant filed motion to suppress because of prosecutor's fear the motion to suppress might be granted).

Petitioner's claim that appellate counsel should have raised a claim under the Supreme Court's decision in Alleyne also fails. In Alleyne, the Supreme Court held that any fact that increases a mandatory-minimum sentence is an element of an enhanced offense and must be submitted to the jury and found beyond a reasonable doubt or admitted by the defendant. Alleyne, 133 S. Ct. at 2155. Here, Petitioner was not subject to a statutory mandatory minimum term of imprisonment because counsel Owen successfully advocated on his behalf that he did not qualify as an armed career criminal. Because Petitioner was not subject to a mandatory minimum, Alleyne has no application to this case, and appellate counsel did not provide deficient representation in declining to present an argument that had no chance of succeeding.

Addressing Petitioner's arguments that appellate counsel should have challenged this Court's failure to adjudicate counsel Owen's motion to withdraw as counsel, this Court denied that motion as moot on February 1, 2013, because counsel withdrew the motion at Petitioner's sentencing hearing. See (Crim. Case No. 3:11-cr-336-RJC-1, Doc. Entry Dated 2/1/13). If that docket entry were not enough to preclude this claim on appeal (which it is), at the beginning of

his sentencing hearing, Petitioner affirmed the answers he provided during the Rule 11 colloquy as true and correct, one of which was that he was satisfied with counsel Owen's representation. At no time during his sentencing hearing did Petitioner request new counsel or suggest that counsel's representation was deficient. Accordingly, this claim would have failed on appeal.

Likewise, there is no reasonable probability that a claim of a conflict of interest could have succeeded on appeal. There is no conflict of interest apparent on the face of the record, and counsel Owen's letter to Petitioner addressing his claims of ineffective assistance, attached to Petitioner's motion as Exhibit I, makes clear that she was working for Petitioner, not the Government, and doing her best to obtain the best result possible for him. See (Doc. No. 1-3 at 55: Ex. I, Attached to Pet. Motion to Vacate). With no evidence supporting a conflict-of-interest claim, appellate counsel did not provide deficient representation in declining to assert one.

Finally, there is also no evidence in the record that Petitioner suffered from any mental impairment that would have supported a claim that counsel Owen should have investigated his mental state. Petitioner has submitted only evidence of two prescription drugs he was taking at some point, but there is no evidence that these drugs impaired his ability to assist in his defense or that he was not able to understand the proceedings against him. To the contrary, the many letters he wrote to this Court and his oral advocacy make clear that he was capable of assisting in his defense and that he understood the proceedings.

### C. Petitioner's additional claims raised in his original motion to vacate.

In addition to arguing ineffective assistance of counsel, Petitioner also asserts, in his original motion to vacate, that the Government engaged in vindictive conduct, causing his plea to be unknowing and involuntary; that the Government withheld evidence of a two-hour recording from the Charlotte-Mecklenburg Police Department comprising the break in the interview of

Adams, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); that this Court found facts related to Petitioner's offense that increased his sentence in violation of <u>Alleyne</u>; and that his guilty plea was involuntary because he was impaired at the time it was entered and later affirmed. With respect to Petitioner's claim of vindictive prosecution, Petitioner asserts that Government counsel threatened to seek a superseding indictment if Petitioner did not plead guilty to the § 922(g) offense and if he did not withdraw his objection to the four-level enhancement based on his having possessed a firearm in connection with another felony offense and that he would not have pleaded guilty in the absence of this threat or had he known that he would not be able to challenge the enhancement.

First, each of these claims is procedurally defaulted, because Petitioner did not challenge his guilty plea as unknowing or involuntary, assert a claim of vindictive prosecution, assert a <u>Brady</u> violation, or challenge this Court's sentencing-related fact-finding on direct appeal. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on collateral review only if the defendant can first demonstrate cause and actual prejudice, or that he is actually innocent of the conviction he challenges. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998). With respect to the cause-and-prejudice standard, a petitioner must demonstrate (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. <u>United States v. Pettiford</u>, 612 F.3d 270, 280 (4th Cir. 2010).

Here, Petitioner has not established cause external to his defense for failing to assert these claims earlier. Even if Petitioner could show cause for failing to assert a claim of vindictive prosecution, he cannot show prejudice. First, Petitioner cannot show that he was prejudiced by his failure to assert a claim of vindictive prosecution based on the Government's "threat" to seek

a superseding indictment if he declined to plead guilty to the § 922 offense, because the Supreme

Court has made clear that a prosecutor's attempt to induce a guilty plea by asserting that if the

defendant does not plead guilty, the prosecutor will seek an indictment on more serious charges

does not violate a defendant's right to due process.  See Bordenkircher, 434 U.S. at 358.  Second,

Petitioner's vindictive-prosecution claim would not have succeeded, even if not defaulted,

because the evidence supports the application of the enhancement Petitioner asserts he was

unable to challenge.  Agent Bryson's testimony, which was based both on witness statements and

corroborating evidence found at the scene of the shooting, supported the application of the

enhancement, and Petitioner has not presented any competent evidence refuting that testimony.

Additionally, at every stage of the proceedings, Petitioner insisted that he wished to plead guilty,

and at no time before or after Petitioner's counsel announced that Petitioner was withdrawing his

objection to the enhancement did Petitioner suggest that his guilty plea was contingent on his

ability to assert that objection or that he wished to withdraw his guilty plea.  Because Petitioner

cannot show that he suffered any prejudice from the withdrawal of his objection, he also cannot

show that any suggestion by the Government that it would seek new charges against him if he

did not withdraw the objection prejudiced him.  Thus, regardless of whether this claim is

procedurally defaulted, it fails on the merits.

 Similarly, Petitioner's Brady claim would fail, even if not procedurally barred, because

there is no evidence in the record that a two-hour recording exists or, if it does exist, that it

contains anything helpful to his defense.  See United States v. Catone, 769 F.3d 866, 871 (4th

Cir. 2014) (to establish a violation under Brady, a defendant must show that (1) the evidence

withheld is either exculpatory or impeaching, (2) the government suppressed the evidence, and

(3) the evidence was material to the defense).  Petitioner's Alleyne claim fails because, as set

discussed above, <u>Alleyne</u> does not limit this Court's authority to find facts relevant to enhancements under the Sentencing Guidelines. Finally, Petitioner's claim that he was medically impaired when he entered and then later affirmed his guilty plea suffers from a lack of proof, as discussed above. Although Petitioner has shown that he was taking certain medications at times during the Government's prosecution of him, he has not presented any evidence that he was, in fact, impaired when he entered his guilty plea or at either sentencing hearing during which he affirmed that he still wished to plead guilty and that his guilty plea was knowing and voluntary. Therefore, Petitioner has not produced any evidence supporting an argument that he can show that he was prejudiced by his default in failing to assert these claims earlier or that there is any likelihood that they would have produced a different result, even if not defaulted.

### D. Petitioner's claims raised in his "Supplemental Memorandum" filed on June 30, 2015 (Doc. No. 59).

Finally, four days after the Government filed its response to Petitioner's motion to vacate and his earlier supplements, Petitioner filed, without authorization, a fifth supplement to his motion. The Government filed a response addressing each of these claims on August 30, 2015. <u>See</u> (Doc. No. 64). For the following reasons, the Court finds that Petitioner is not entitled to relief on any of his supplemental claims.

Petitioner first asserts that this Court failed to adhere to its discovery order, but he does not specify in what way this Court failed to do so. This claim is procedurally defaulted, and Petitioner has not asserted cause or shown that any decision this Court made with respect to his discovery prejudiced him. Additionally, as discussed above, this Court continued Petitioner's first sentencing hearing to ensure that he had the opportunity to review the discovery against him, notwithstanding trial counsel's statement to the Court that Petitioner had reviewed the

discovery in its entirety.  At no time during Petitioner's second sentencing hearing did he assert that he had not been permitted to review the discovery.  This contention is without merit.

Petitioner next asserts that the Government withheld 74 pages "of records from the Bureau of Alcohol, Tobacco, Firearms and Explosives."  (Civ. Doc. No. 59 at 16).  Petitioner appears to support this assertion by comparing an excerpt from trial counsel's billing records that reflect that she reviewed 500 pages of discovery with a Freedom of Information Act ("FOIA") response, noting that the Government had 574 pages of records relating to Petitioner.  (Id. at 17).  It is not clear, however, from the evidence Petitioner presents that any evidence was withheld from him, much less pertinent ATF records that were material for purposes of a Brady analysis.  This assertion does not warrant any action by this Court, much less the vacating of Petitioner's conviction or sentence.

Petitioner next asserts that the Government withheld the fact that a gunshot residue analysis was inconclusive, asserting that he would not have pleaded guilty had he known that this test was conducted because it supports his claim of innocence.  Petitioner's contention is without merit.  First, the report itself makes clear that blood was covering both of Petitioner's hands and that the technician was unable to "do" his right palm due to injury.  (Civ. No. 59-2 at 48: Ex. 4, Attached to Fifth Supp. to Mot. to Vacate).  Therefore, the evidence is not exculpatory as Petitioner contends.  In any event, as the Court has already discussed thoroughly, Petitioner expressly admitted that he was holding the firearm, as he acknowledged having shot a gun "[p]robably seven" times.  (Id. at 41: Ex. 2, Attached to Fifth Supp. to Mot. to Vacate).

Petitioner next asserts that he was not provided with all of the statements made by his daughter, Camille, to investigation officers, claiming that he was given only one of those statements but that there were, in fact, other statements.  Petitioner has not presented competent

evidence that any evidence was withheld from him, however, including any statements made by his daughter.

Petitioner next asserts that the Government suppressed evidence that Adams bribed investigating officers into not charging him and charging Petitioner, instead, with a crime related to the shooting. Petitioner has not presented any evidence supporting this conclusory assertion. Petitioner attached various single-page transcript excerpts to support this claim. However, it is not clear who is being interviewed in these transcript excerpts. To the extent that the person interviewed is Adams, as alleged, the context belies any suggestion that the officers were offering to give Adams money or to accept money from Adams so he could escape criminal liability. Moreover, aside from Petitioner's conclusory assertion, there is no evidence that the Government suppressed any of these documents.

Petitioner's remaining claims of misconduct in his supplement also fail for lack of proof, as does his claim that trial counsel did not adequately prepare for sentencing or for a potential trial. In short, Petitioner admitted that he possessed the gun, his trial counsel secured for him a reasonable sentence and effectively argued against the imposition of a 15-year mandatory minimum in the process, and this Court made clear that the sentence imposed was the appropriate sentence notwithstanding any particular offense-level enhancement. Indeed, the Court even granted a downward variance, resulting in a sentence much lower than Petitioner could have received, given the Government's evidence against him.

IV.    CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. §
      2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2.    For the reasons stated herein, the following pending motions are **GRANTED**:
      Petitioner's Motion for Leave to Expand the Record Pursuant to Rule 7 of the
      Rules Governing Section 2255 (Doc. No. 71); Petitioner's Motion for Leave to
      Supplement Previously filed 2255, (Doc. No. 73); Petitioner's Motion re: Motion
      to Vacate/Set Aside/Correct Sentence (Doc. No. 74); Motion to Withdraw as
      Attorney by Federal Defender (Doc. No. 80); Petitioner's Motion to Withdraw
      Counsel and Proceed Pro Se (Doc. No. 81); and Petitioner's Motion for Status
      Report or Hearing re Motion to Vacate/Set Aside/Correct Sentence (Doc. No. 85).

3.    For the reasons stated herein, the following motions are **DENIED**: Petitioner's
      Motion for Access to Sealed Court Records (Doc. No. 35); (2) Petitioner's Motion
      for Bond (Doc. No. 42); Petitioner's Motion for Status Report Hearing (Doc. No.
      68); Petitioner's Motion to Appoint Counsel (Doc. No. 78); Petitioner's
      Supplement Newly Amended Supplement to Motion to Vacate (Doc. No. 82); and
      Petitioner's Motion for Leave to Supplement and/or Amend Previously Filed
      Motion to Vacate (Doc. No. 89).

4.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules
      Governing Section 2254 and Section 2255 Cases, this Court declines to issue a
      certificate of appealability.  See 28 U.S.C. 2253(c)(2); Miller-El v. Cockrell,
      537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must
      demonstrate that reasonable jurists would find the district court's assessment of
      the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473,

484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 12, 2017

Robert J. Conrad, Jr.
United States District Judge